NOTICE

Decision filed 08/18/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200354-U

NO. 5-20-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ESTATE OF SHEILA DENISE WASHINGTON, a Disabled Adult | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| (Annette Washington, Petitioner-Appellant, v. Associated Trust Company, as Guardian of the Estate, and Sharon Mehrtens, as Guardian of the Person, Respondents-Appellees). | ) ) ) ) ) ) ) | No. 98-P-124<br><br>Honorable Thomas B. Cannady, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court erred in dismissing the appellant's "Petition for Modification of Visitation Order" for lack of standing because the terms of the visitation order granted the appellant standing to seek a modification of said order.

¶ 2    Appellant, Annette Washington, appeals the circuit court's order dismissing her "Petition for Modification of Visitation Order," and contends that the circuit court erred in finding that she lacked standing to seek modification of a visitation order under section 11a-17(g)(2) of the Probate Act of 1975 (755 ILCS 5/11a-17(g)(2) (West 2020)). For the reasons that follow, we reverse the judgment of the circuit court dismissing Annette's petition and remand this matter for further proceedings consistent with this order.

1

¶ 3                                    BACKGROUND

¶ 4      Sheila Washington is a 40-year-old quadriplegic, who has been disabled since childhood. When Sheila turned 18 years of age, the circuit court adjudged Sheila as a disabled adult, and an estate for her person and for her financial affairs was created. The circuit court also appointed guardians for Sheila to manage her person and estate. At the time of the relevant proceedings in this case, Sharon Mehrtens was the guardian of the person of Sheila Washington, and Associated Trust Company (Associated Trust) was the court-appointed guardian for the estate of Sheila Washington (collectively referred to as the guardians).

¶ 5      On April 23, 2009, Annette Washington, Sheila's aunt, filed a petition to have herself appointed as the guardian of the person of Sheila Washington and litigation ensued. Over the next several years, Annette and the guardians, with the input from the guardian *ad litem* (GAL), negotiated a visitation plan where Annette and other family members could visit with Sheila. Ultimately, the parties reached a resolution which allowed Annette the opportunity to visit with Sheila on a regular basis.

¶ 6      On December 13, 2012, the circuit court entered an "Order for Visitation"[1] that memorialized the agreed terms of visitation with Sheila. This is the order which is at issue in these proceedings. The visitation order provided in part follows:

        "2. Upon recommendation of the Guardian of the Person, Sharon Mehrtens, that

        visitation between Sheila Washington and members of her immediate family, including

        Annette Washington, may enhance her well-being and therefore be in Sheila

        Washington's best interest if it occurs on certain terms hereinafter set forth, and in

_____

        [1]Although not titled as such, the parties on appeal have alternatively referred to this visitation order as an "agreed order," a "consent decree," and a "consent order." For clarity, we will refer to the agreed-upon December 13, 2012, order as the "visitation order."

reliance upon the Guardian ad Litem's report and recommendation that he believes such terms for visitation will, if followed, preserve and protect the continuity of Sheila's care and well-being, the Court determines that visitation shall take place on a trial basis according to the following terms and subject to further Order of Court."

¶ 7     The visitation order further provided that Mehrtens was not divested of any right, power, or authority, and that no other person was vested with any right, power, or authority under the order. Furthermore, the visitation order ratified Mehrtens' rights, responsibilities, and obligations to solely make decisions and take actions within the scope of her appointed office that were in the best interest of Sheila, including visitation.

¶ 8     The visitation order set forth the terms of visitation adopted by the circuit court. Section A of the visitation order specifically named certain "Pre-Approved Visitors," which included Annette. Section A provided that Mehrtens believed the pre-approved visitors were individuals with whom Sheila would "receive the benefit of positive and constructive interaction." Section A further provided that the pre-approved visitors could enjoy visitation with Sheila without the limitations set forth in section B, titled "Visitation by Other Visitors" and "otherwise in conformity with the remaining terms" of the visitation order. Sections C through E set forth the terms for overnight visitation, daily visitation, and monitoring by camera. Section F, titled "Oversight for Visitation and Other Provisions," provided that Mehrtens was responsible for the oversight and monitoring of any period of visitation. Section F further provided that any questions regarding visitation and any problems arising during visitation were to be brought to Mehrtens' attention at the earliest opportunity. In the event of any violations of the terms of the visitation order, Mehrtens was to notify the GAL and Associated Trust and bring the facts of

3

such violation to the circuit court's attention. Finally, paragraph 7 of section F of the visitation order stated:

> "7. Nothing herein shall preclude any person or party from seeking relief from any part of this Order or any modification or revocation, in whole or in part, of its terms. The Court shall retain jurisdiction over this Order for purposes of monitoring, enforcing, modifying and/or revoking its terms in the future."

Relying on the recommendations of Mehrtens and the GAL, the circuit court entered the December 13, 2012, visitation order and determined that visitation would occur "subject to further Order of Court."

¶ 9 On March 26, 2020, Annette filed a "Petition for Modification of Visitation Order" pursuant to section 11a-17 of the Probate Act (755 ILCS 5/11a-17(g)(2) (West 2020)) seeking to modify the visitation order. Annette's petition alleged that the following substantial changes had occurred since the visitation order had been entered in 2012: (1) the death of family members initially granted visitation with Sheila, (2) changes to Sheila's "household procedures," and (3) changes to "communication methods and procedures." The petition further alleged that a "reasonable and liberal" visitation schedule between Sheila and Annette would be in Sheila's best interest. Finally, the petition set forth a proposed, revised visitation schedule.

¶ 10 Mehrtens filed a motion to dismiss Annette's petition pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). Mehrtens alleged that Annette was not a "proper person to bring a cause of action seeking a visitation order under the Probate Act." Associated Trust also filed a motion to dismiss, adopting the motion filed by Mehrtens.

¶ 11 Annette filed a response in opposition to the guardians' motions to dismiss. Therein, she claimed that at the time the agreed visitation order was entered, the guardians had waived any

4

objection to Annette's standing to seek modification of the visitation order. In support of her contention, Annette referenced and relied upon paragraph 7 of section F of the visitation order.

¶ 12　In reply, Mehrtens argued that she timely objected to standing. Mehrtens further argued that Annette did not have standing under the Probate Act, and that due to the nature of the consent order, Annette was limited to seek review of the visitation order on "contractual grounds." Associated Trust also argued that Annette had no standing under section 11a-17(g)(2) of the Probate Act, and that the defense of lack of standing had not been waived by the entry of the visitation order.

¶ 13　On May 28, 2020, the circuit court heard arguments regarding the guardians' motions to dismiss. In an order dated June 19, 2020, the circuit court granted the guardians' motions to dismiss finding that Annette lacked standing to seek an order for visitation pursuant to section 11a-17(g)(2) of the Probate Act and dismissed Annette's petition. The circuit court found that the visitation order was "contractual in nature." The circuit court further concluded that the "proper means" to address modification of the visitation order was for the GAL to investigate any matters brought to the GAL's attention and advise the circuit court whether any modification of the visitation order was needed. In the June 19 order, the circuit court stated that it was construing Annette's petition as a request for the GAL to review the visitation order, and granted Annette 14 days to raise any issues regarding the visitation order and bring them to the attention of the GAL. The circuit court ordered the GAL to investigate any such matters brought to the GAL's attention and report any recommendations to the court regarding whether the visitation order should be modified or amended. The circuit court further ordered that the GAL testify in open court to any recommendations, subject to examination by the parties, including Annette.

¶ 14    On July 16, 2020, Annette filed a motion to reconsider the June 19 order dismissing her petition on the grounds that she lacked standing. Annette asserted that under the visitation order, a party to the order could seek a modification or revocation of its terms. Annette also asserted that because the visitation order was contractual in nature, section 11a-17(g)(2) of the Probate Act did not preclude Annette from seeking a modification of the visitation order. Annette contended that the circuit court's order finding she lacked standing would "inevitably prejudice her and any other party granted rights under the [v]isitation [o]rder should a similar need arise in the future."

¶ 15    Associated Trust filed a response arguing, *inter alia*, that Annette lacked standing, and that the visitation order could not be modified without the consent of each party. Mehrtens also filed a response adopting the response filed by Associated Trust and arguing that the circuit court did not err in determining Annette lacked standing to seek modification of the visitation order. Following a hearing, the trial court denied Annette's motion to reconsider. This appeal followed.

¶ 16                                    ANALYSIS

¶ 17    On appeal, Annette contends that the circuit court erred in finding that she lacked standing to seek a modification of the visitation order. Annette claims that she has standing to seek modification under both the Probate Act and the visitation order itself. The guardians argue that Annette does not have standing under the Probate Act because Annette, as Sheila's aunt, is not a relative listed in section 11a-17(g)(2) who may file a verified petition seeking visitation with Sheila. The guardians also argue that the visitation order did not provide Annette with standing and could not be modified without the consent of each party.

¶ 18    At the outset, we note that the visitation order sets forth the specific agreed-to terms between the parties regarding visitation with Sheila. Accordingly, our analysis begins with the

6

agreed-upon visitation order. Agreed orders are contractual agreements, and the law of contracts controls their interpretation. *Commonwealth Edison Co. v. Elston Avenue Properties, LLC*, 2017 IL App (1st) 153228, ¶ 13. Like other contracts, agreed orders must be construed to give effect to the parties' intention which, when there is no ambiguity in the terms, must be determined from the language of the agreed order alone. *Commonwealth Edison Co.*, 2017 IL App (1st) 153228, ¶ 13. The terms or provisions of an agreed order will be found ambiguous only if they are reasonably or fairly susceptible to more than one interpretation. *Allied Asphalt Paving Co. v. Village of Hillside*, 314 Ill. App. 3d 138, 144 (2000). A term or provision is not rendered ambiguous merely because the parties disagree on its meaning or application. *Allied Asphalt Paving Co.*, 314 Ill. App. 3d at 144. Additionally, a contract may not be interpreted in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). When parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language used is to be given effect. *Thompson*, 241 Ill. 2d at 442. We review the construction, interpretation, and effect of an agreed order *de novo*. *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 27.

¶ 19    Here, the visitation order clearly set forth the agreed-upon terms regarding visitation with Sheila. The visitation order also contained a provision that directly addressed the issues of modification or revocation of the order. Section F, paragraph 7 unambiguously stated that nothing in the order precluded "any person or party from seeking relief from any part of [the visitation order] or any modification or revocation, in whole or in part, of its terms." The visitation order further stated that the circuit court retained jurisdiction over the order "for purposes of monitoring, enforcing, modifying, and or revoking its terms in the future." At the

7

time the agreed-upon order was entered into, Annette was a party to the agreement. Section F, paragraph 7 allowed Annette to seek a modification of the visitation order from the circuit court. Thus, under the plain language of the contractual agreement, Annette had standing to file her "Petition for Modification of Visitation Order."

¶ 20    The guardians argue that the visitation order was an agreed order, and that an agreed order is generally binding on the parties and may not be amended or varied without the parties' consent. See *In re M.M.D.*, 213 Ill. 2d 105, 114 (2004). In this case, however, the parties agreed to the language used in section F, paragraph 7 of the visitation order. We presume this language was purposefully included in the visitation order and such language must be given effect. *Thompson*, 241 Ill. 2d at 442. Thus, by its very terms, the visitation order removed Annette's obligation to obtain the consent of all the parties in order to seek modification of the visitation order. If we were to find that the visitation order could not be modified without the consent of the parties, as urged by the guardians, section F, paragraph 7 would be rendered meaningless.

¶ 21    In sum, while the circuit court correctly found that the visitation order was "contractual in nature," the circuit court ultimately erred in dismissing Annette's petition based upon a lack of standing under the Probate Act. The visitation order unambiguously conferred standing on Annette, as a party to the agreement, and allowed Annette to seek modification of the order in the circuit court. Rather, than dismissing Annette's petition pursuant to section 11a-17(g)(2), the circuit court should have allowed Annette to file an amended petition pursuant to paragraph 7 of section F of the visitation order.[2]

¶ 22    Because the visitation order controls standing in this case, we need not address whether Annette had standing under the Probate Act to petition for modification of the visitation order.

---

[2]We find no basis for involving the GAL as described in the circuit court's order.

Finally, we have considered Associated Trust's request to dismiss Annette's appeal due to an incomplete record and deny the request for such dismissal. Furthermore, the guardians' motions to dismiss the appeal for lack of standing are hereby denied. Accordingly, we reverse the judgment of the circuit court dismissing Annette's petition and remand this matter for further proceedings consistent with this order.

¶ 23    Reversed and remanded.