2022 IL App (1st) 210294-U

FIFTH DIVISION
MAY 27, 2022

No. 1-21-0294

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 16 CH 12317 |
| THE YOUNG MEN'S CHRISTIAN | ) | |
| ASSOCIATION a/k/a YMCA OF | ) | |
| METROPOLITAN CHICAGO and | ) | |
| RIVERPORT INSURANCE COMPANY, | ) | Honorable |
| | ) | Anna H. Demacopoulos, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment granting summary judgment is affirmed.

¶ 2    The plaintiff-appellee, Old Republic Insurance Company (Old Republic), brought a

declaratory judgment action in the circuit court of Cook County against the defendants-appellants,

the Young Men's Christian Association of Metropolitan Chicago (YMCA) and Riverport

Insurance Company (Riverport). The circuit court granted summary judgment in favor of Old

Republic. YMCA and Riverport now appeal. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                     BACKGROUND

¶ 4     In September 2012, YMCA hired Air Comfort Corporation (Air Comfort) as the contractor to perform routine HVAC maintenance on YMCA's Chicagoland facilities.[1] On September 17, 2012, YMCA and Air Comfort entered into a "Master Agreement Between Owner and Contractor" (Master Agreement). The Master Agreement was drafted by YMCA's counsel. The Master Agreement provided: "The Contractor's services consist of those services performed by the Contractor's employees and Contractor's consultants as enumerated in this Agreement, and more particularly, in one or more Statements of Work." Section 6 of the Master Agreement required Air Comfort to obtain commercial liability insurance and to name YMCA as an additional insured on the policy. Air Comfort then began its routine maintenance work at the various YMCA locations.

¶ 5     In 2013, YMCA began soliciting bids from HVAC contractors for upgrade projects, as several of its facilities needed to have their HVAC systems replaced or updated. YMCA hired Air Comfort to complete such an upgrade at its Irving Park facility in Chicago. On February 11, 2013, YMCA and Air Comfort entered into a new contract for the upgraded HVAC project at the Irving Park facility (Irving Park Agreement). The Irving Park Agreement was also drafted by YMCA's counsel and required Air Comfort to name YMCA as an additional insured on its insurance policy.

¶ 6     In April 2013, YMCA hired Air Comfort to complete an upgraded HVAC project at its Indian Boundary facility. For the project, YMCA and Air Comfort entered into a Statement of Work agreement (Indian Boundary Statement of Work) on April 30, 2013, which is the operative contract at issue in this appeal. The Indian Boundary Statement of Work was also drafted by

---

[1]Air Comfort is not a party to this appeal.

YMCA's counsel. However, unlike the Master Agreement and Irving Park Agreement, the Indian Boundary Statement of Work did not include a provision requiring Air Comfort to add YMCA to its insurance policy as an additional insured.

¶ 7    The Indian Boundary Statement of Work's heading states: "ATTACHED AS PART OF SCHEDULE 1 TO THAT CERTAIN MASTER SERVICES AGREEMENT DATED FEBRUARY 11, 2013." The first paragraph of the Indian Boundary Statement of Work provides:

> "This Statement of Work ('SOW') is entered into as of this 30th day of April, 2013, pursuant to that certain Standard From [*sic*] of Agreement Between Owner and Contractor, dated February 11, 2013 (the 'Agreement') between YMCA of Metropolitan Chicago, an Illinois not-for-profit corporation, as owner ('Owner') and Air Comfort Corporation, an Illinois corporation, as contractor ('Contractor'). The Project performed as set forth below shall be governed by the terms of the Agreement unless expressly modified herein. Capitalized terms not otherwise defined will have the meaning set forth in the Agreement."

¶ 8    On May 13, 2013, an Air Comfort employee, Joseph Dale, sustained injuries while working on the upgrade project at the Indian Boundary facility.[2] Mr. Dale filed a negligence complaint against YMCA, claiming that YMCA failed to inspect and safely maintain the vent pit and grating at its Indian Boundary facility which resulted in his injuries.

¶ 9    In response to Mr. Dale's lawsuit, YMCA, *inter alia*, tendered defense and indemnification of Mr. Dale's lawsuit to Air Comfort's insurance carrier, Old Republic. Old Republic denied coverage.[3]

---

[2]Mr. Dale is not a party to this appeal.
[3]Mr. Dale received workers compensation benefits from Air Comfort for the incident under a workers compensation insurance policy issued by Old Republic.

¶ 10    Old Republic then filed a declaratory judgment action against YMCA and its insurance carrier, Riverport. The complaint sought a declaration that Old Republic owes "no duty to defend, indemnify or otherwise provide additional insured coverage to YMCA" under Old Republic's insurance policy with Air Comfort for losses incurred in connection with Mr. Dale's lawsuit. Old Republic's complaint explained that it issued a commercial general liability policy of insurance to Air Comfort, effective from April 1, 2013, to April 1, 2014, and the policy required additional insured persons or organizations to be included in a written contract or agreement. The complaint alleged: "There is no written contract that required Air Comfort to name YMCA as an additional insured on its *** Policy with respect to work performed by Air Comfort at the Indian Boundary YMCA pursuant to any such contract."[4]

¶ 11    In response to Old Republic's complaint, YMCA filed a counterclaim, seeking a declaration that Old Republic owes a duty to defend it against Mr. Dale's lawsuit. In its amended counterclaim, YMCA acknowledged that the Indian Boundary Statement of Work is a binding, enforceable contract controlling the Indian Boundary project. However, YMCA asserted that the Indian Boundary Statement of Work incorporated the terms of the Master Agreement dated September 17, 2012, which required YMCA to be named as an additional insured on Air Comfort's insurance policy with Old Republic. YMCA additionally alleged that the Indian Boundary Statement of Work referenced and incorporated the February 11, 2013, Irving Park Agreement, which covered the Irving Park upgrade project, and which also required Air Comfort to name YMCA as an additional insured under its insurance policy.

¶ 12    While the declaratory judgment action was pending, Mr. Dale settled his lawsuit against

---

[4]Old Republic's complaint made an alternative argument that even if YMCA was an additional insured, it was still not entitled to coverage under the insurance policy because Mr. Dale's lawsuit fell outside its scope. That alternative argument is not at issue in this appeal.

YMCA for $700,000. In turn, YMCA and Riverport entered into a separate agreement with Old Republic, entitled "Settlement Agreement and Release." The Settlement Agreement and Release provided that YMCA and Riverport would pay half of Mr. Dale's settlement amount ($350,000) and Old Republic would pay the other half ($350,000). The parties agreed that the resolution of Mr. Dale's lawsuit "does not in any way resolve the matters to be litigated" in the declaratory judgment action, which the Settlement Agreement and Release referred to as "the Coverage Suit." The Settlement Agreement and Release stated that the parties would continue to litigate "the Coverage Suit." Pursuant to the Settlement Agreement and Release, the parties agreed that:

> "[I]f in the Coverage Suit a judicial determination is made that Old Republic owes additional insured coverage under the Old Republic Policy to YMCA for the [Mr.] Dale Lawsuit, then Old Republic will pay YMCA and [Riverport] $350,000 plus the attorneys' fees and costs incurred by the YMCA and [Riverport] in defending the [Mr.] Dale Lawsuit."

Similarly, the Settlement Agreement and Release further provided that:

> "[I]f in the Coverage Suit a judicial determination is made that Old Republic owes no additional insured coverage under the Old Republic Policy to YMCA for the [Mr.] Dale Lawsuit, then YMCA and [Riverport] will pay Old Republic $350,000 plus $197,000 for a total payment of $547,000. This would reimburse Old Republic for the $350,000 paid to [Mr.] Dale plus the waived workers compensation lien $197,000."

¶ 13    Following the completion of discovery in the declaratory judgment action, the parties cross-moved for summary judgment. The trial court heard arguments on the cross-motions. On February 16, 2021, the trial court granted Old Republic's motion for summary judgment and

denied YMCA and Riverport's motion. In so ruling, the trial court stated:

"The issue for the Court to determine is whether or not the YMCA is entitled to additional coverage from the Old Republic under the [insurance] policy issued for Air Comfort Corporation.

\*\*\*

What is in dispute is whether or not there is a written contract of which the YMCA has agreed in writing to be an additional insured for a specific location.

Was the YMCA named in a writing as an additional insured?

The [Indian Boundary] Statement of Work describes Air Comfort's work at the Indian Boundary YMCA and references a broader document called a Master Service Agreement dated February 11, 2013. There is no factual dispute that no such document exists.

The YMCA argues that either the Master Service Agreement dated September 17, 2012, applies, or the [Irving] Park Agreement dated February 11, 2013, applies. Because if one of these applies, then the requirement that it be in writing is satisfied.

However, Old Republic argues that neither one of these documents apply because that would require the Court to rewrite a document which is contrary to contract interpretation law.

In order to determine whether the YMCA was named an additional insured, the Court must determine if the [Indian Boundary] Statement of Work is ambiguous. Neither party, Old Republic, nor the YMCA, take the position that this is an ambiguous contract or an ambiguous document. Therefore, the Court should

not take any further analysis under this argument.

So now the Court must determine whether or not the YMCA is an additional insured, and whether or not there is a writing.

This Court finds there's no genuine issue of material fact [t]hat there is no writing of which the YMCA becomes an additional insured for that specific location.

The Statement of Work that is referenced that is specifically stated or titled 'Master Service Agreement Dated February 11, 2013' does not exist.

For the Court to make the stretch that the YMCA is asking to make, that we should incorporate the other two documents, that one dated September 17, 2012, or the other document that is dated February 11, 2013, but is only specific for a location is incorrect because it is contrary to contract interpretation.

So for all of those reasons, the Court will be granting summary judgment on behalf of Old Republic and denying it on behalf of YMCA."

The trial court's written order concluded that pursuant to the Settlement Agreement and Release, "YMCA and Riverport shall pay Old Republic the total sum of $547,000." This appeal followed.

¶ 14                                ANALYSIS

¶ 15    We note that we have jurisdiction to consider this matter, as YMCA and Riverport filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 16    As an initial matter, we address Old Republic's motion to dismiss this appeal and impose sanctions against YMCA and Riverport, which we consider within the scope of our resolution of the case. The basis for Old Republic's motion is its claim that YMCA and Riverport forfeited the right to appeal. Specifically, Old Republic avers that pursuant to the Settlement Agreement and

Release, the parties intended for the "Coverage Suit" to resolve this matter, which they allege occurred when the trial court made a "judicial determination" in Old Republic's favor in the declaratory judgment action. Old Republic asserts that by filing this appeal, YMCA and Riverport have "reneged" on the agreement to resolve this matter in the "Coverage Suit."

¶ 17    We are not persuaded by Old Republic's argument. First, nowhere in the Settlement Agreement and Release document does it state, expressly or otherwise, that the parties waive their right to appeal. Secondly, it is true that the parties intended to resolve this matter through the instant declaratory judgment action (or the "Coverage Suit" as they refer to it), but that does not limit the resolution to *only* the trial court's ruling. Indeed, it is well established that an appeal is a continuation of a judicial proceeding. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); see also *Browning, Ektelon Division v. Williams*, 348 Ill. App. 3d 830, 833 (2004) (an appeal is a continuation of the proceedings and, until either the time to appeal has expired or until the court of review has rendered a decision, the circuit court's judgment is not a final adjudication). As this appeal is a continuation of the judicial proceeding below, our ruling on the trial court's judicial determination will still conform to the parties' agreement to have a judicial resolution of this dispute. Thus, YMCA and Riverport did not forfeit their right to appeal, and we deny Old Republic's motion to dismiss this appeal on that basis.

¶ 18    Turning to the merits before us, YMCA and Riverport present the following issue: whether the trial court erred in granting summary judgment in favor of Old Republic. YMCA and Riverport argue that the Indian Boundary Statement of Work incorporated the Master Agreement and/or the Irving Park Agreement, and both those contracts required Air Comfort to add YMCA as an additional insured on its insurance policy with Old Republic. They assert that, consequently, Old Republic is required to provide insurance coverage to YMCA in Mr. Dale's lawsuit regarding the

Indian Boundary project, and so the trial court erred in finding in favor of Old Republic in the declaratory judgment action. YMCA and Riverport ask us to reverse the trial court's summary judgment order in favor of Old Republic.

¶ 19    Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 20    Summary judgment was granted by the trial court in this case, on the basis that the Indian Boundary Statement of Work did not require Air Comfort to add YMCA as an additional insured on its insurance policy, and so Old Republic does not have a duty to provide coverage to YMCA for Mr. Dale's lawsuit. Thus, our analysis requires us to interpret the Indian Boundary Statement of Work, as that is the operative contract at issue. "The basic rules of contract interpretation are well settled." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). When construing a contract, the primary objective is to give effect to the intention of the parties. *Id.* To do this, a court will first look to the language of the contract and view the contract as a whole. *Id.* If the words in the contract are clear and unambiguous, they must be given their plain and ordinary meaning. *Id.* However, if the language of the contract is ambiguous, a court can consider extrinsic evidence to determine the parties' intent. *Id.*

¶ 21    Significantly here, YMCA and Riverport do not contend that the Indian Boundary

Statement of Work is ambiguous. We agree that the Indian Boundary Statement of Work is, an unambiguous contract, as the language is clear, and the general meaning is easy to ascertain. See *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). The Indian Boundary Statement of Work does not provide, anywhere or in any way, that the parties intended for Air Comfort to add YMCA as an additional insured on its insurance policy with Old Republic. In fact, the word "insurance" is not even mentioned in the Indian Boundary Statement of Work. Under these facts and circumstances, for this court to interpret the Indian Boundary Statement of Work to mean that the parties intended for YMCA to be an additional insured, would be contrary to the contract's plain language. See *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 112 (a court will not interpret a contract in a way that is contrary to the plain and obvious meaning of the language used).

¶ 22 YMCA and Riverport nonetheless argue that the Indian Boundary Statement of Work incorporated the Master Agreement and/or Irving Park Agreement, both of which *do* require YMCA to be named as an additional insured. However, nothing in the Indian Boundary Statement of Work indicates that the parties intended to incorporate either or both of those agreements into the Indian Boundary Statement of Work. Contrary to YMCA and Riverport's argument, the Indian Boundary Statement of Work does not cite or reference either the Master Agreement or the Irving Park Agreement.

¶ 23 The Indian Boundary Statement of Work *does* reference a contract entitled, "MASTER SERVICES AGREEMENT DATED FEBRUARY 11, 2013," and "Standard From [*sic*] of Agreement Between Owner and Contractor, dated February 11, 2013." But, as the trial court

pointed out, *no such contract document exists.*[5] Further, YMCA and Riverport do not claim that they can produce that document. And they do not offer any other explanation regarding the discrepancies in the description of the referenced, non-existent, contract document.

¶ 24 Rather, YMCA and Riverport ask us to look to the Master Agreement and the Irving Park Agreement to demonstrate the parties' *intent* for the Indian Boundary Statement of Work. But as already discussed, it is not in dispute that the Indian Boundary Statement of Work is an *unambiguous* contract. Consequently, our analysis is strictly limited to the language contained within the Indian Boundary Statement of Work, and we will not look to extrinsic evidence, including other contracts and documents, to determine the parties' intent.[6] "If a contract is unambiguous on its face, extrinsic evidence may not be used to interpret it." *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 14.

¶ 25 Mr. Dale's lawsuit arose out of the work contracted in the Indian Boundary Statement of Work between Air Comfort and YMCA for the upgrade project at the Indian Boundary facility. The Indian Boundary Statement of Work is a clear and unambiguous contract that does not reference any other existing contract document; there is no reason for us to look to another contract. And the Indian Boundary Statement of Work does not require Air Comfort to add YMCA as an additional insured on its insurance policy with Old Republic, and so we will not do what the parties failed to do themselves and interpret the parties' intent to be that Air Comfort was to add YMCA as an additional insured. If the parties intended to incorporate another existing document by

---

[5]The Master Agreement is dated September 17, 2012, while the Irving Park Agreement is dated February 11, 2013.

[6]Although our analysis is strictly limited to looking at only the Indian Boundary Statement of Work as it did not incorporate any other contract, we note that, notwithstanding, it is clear that the Master Agreement applied only to the routine HVAC maintenance work and the Irving Park Agreement applied only to the Irving Park upgrade project; neither contract document applied to the Indian Boundary upgrade project.

reference, they clearly could have done so. Since they did not, we cannot assume that the parties intended for such an interpretation.

¶ 26    Accordingly, there is no genuine issue of material fact that the Indian Boundary Statement of Work did not require Air Comfort to add YMCA as an additional insured on its insurance policy, and so Old Republic is not required to provide insurance coverage to YMCA for Mr. Dale's lawsuit. The trial court therefore properly granted summary judgment in favor of Old Republic in the declaratory judgment action, and we affirm the trial court's judgment. See *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 12 (summary judgment is appropriate if no material fact is in dispute and if reasonable persons could not draw differing inferences from the undisputed material facts).

¶ 27                                    CONCLUSION

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 29    Affirmed.