NOTICE

Decision filed 03/24/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220302-U

NO. 5-22-0302

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JAKOB L. CAMPBELL, CAMPBELL RUN ENTERPRISES, LLC, MATTHEW CAMPBELL, and MEGAN CAMPBELL, | ) ) ) ) | Appeal from the Circuit Court of White County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 18-L-03 |
| WHITE COUNTY COAL, LLC, a Delaware Limited Liability Company, | ) ) ) ) | Honorable Thomas J. Dinn III, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly interpreted the Lease and found that "Slurry" was defined to include water and coal slurry, not water alone, and that White County Coal, LLC, disposed of Slurry rather than electing its option to store Slurry. Following the interpretation of the Lease, the circuit court did not err in granting summary judgment in favor of White County Coal, LLC.

¶ 2    The plaintiffs, Jakob L. Campbell, Campbell Run Enterprises, LLC, Matthew Campbell, and Megan Campbell (Campbells), appeal the April 26, 2022, order of the circuit court of White County that granted summary judgment in favor of the defendant, White County Coal, LLC (WCC). For the following reasons, we affirm.

1

¶ 3                               I. BACKGROUND

¶ 4     On February 28, 2018, the Campbells filed their complaint for breach of contract against WCC in the circuit court of White County on the basis that WCC had "refused to make Monthly Rental payments in accordance with the Lease," from February 2017 to the present. On March 29, 2018, WCC filed an answer that denied the allegations.

¶ 5     The lease at issue is entitled "Underground Storage Lease" (Lease) and was entered into by and between Jakob L. Campbell, John L. Campbell,[1] Jana M. Campbell, Matthew S. Campbell, Megan N. Campbell, and WCC on February 7, 2008. The Lease was prepared by attorneys for both parties. The initial draft was prepared by counsel for the Campbells; however, the Lease was exchanged and revised by counsel for each party prior to its final execution on February 7, 2008.

¶ 6     The portions of the Lease relevant to this appeal are as follows:

> "*WHEREAS*, Lessee wishes to inject, store and/or dispose of water and coal slurry ('Slurry') into the underground voids, passageways and corridors created by the mining and removal of the No. 6 seam of coal within the Pattiki I Mine Area (the 'Voids'), and Lessors are willing to lease, let and demise unto Lessee, for such purpose, all of Lessors' right, title and interest in and to all Voids within the Pattiki I Mine Area that are now owned or hereafter acquired, in whole or in part, by Lessors or any of them.
>
> *NOW THEREFORE*, for and in consideration of the rentals payable hereunder and the performance and observance of the terms and conditions contained herein, Lessors do hereby lease, let and demise unto Lessee all of Lessors' right, title and interest in and to all Voids within the Pattiki I Mine Area that are now owned or hereafter acquired by Lessors

---

[1]On July 11, 2011, John L. Campbell and Jana M. Campbell transferred their interests in the property to Campbell Run Enterprises, LLC.

or any Lessor, together with the sole and exclusive right to utilize such Voids for the purpose of injecting, storing and disposing of Slurry, subject to and in accordance with the following terms and conditions, to-wit:

1. The term of this Lease shall extend for a period of ten (10) years from and after the date hereof, with the right in Lessee to extend this Lease for successive additional one (1) year periods until such time as Lessee has completed all coal mining operations in White County, Illinois (including any processing or preparation plants operated in connection with Lessee's Pattiki II mine) and has begun the process of final reclamation ('Final Operations Cessation'). Each extension shall be subject in all respects to the terms and conditions contained herein and, if Lessee is not in arrears in any payments due to Lessors hereunder and/or is not in default of any terms contained in this Agreement, said extension shall take effect automatically in the absence of notice to the contrary by Lessee prior to the commencement of such extended term. This Lease shall terminate automatically and without notice to Lessee upon the date of Final Operations Cessation, and Lessee shall give Lessors notice of the date upon which Final Operations Cessation occurs, it being understood and agreed that this Lease shall terminate upon the date of Final Operations Cessation and not the date of notice.

2. (a) As rental for the rights granted hereunder (the 'Monthly Rental'), Lessee shall pay to Lessors, in the proportions set forth on Exhibit 'C' attached hereto and incorporated herein by reference, the following sums:

i. Beginning on January 1, 2008 and extending through and including the twelfth (12) Disposal Month (as defined below), the sum of $25,000.00 per month for each month during the term of this Lease in which Lessee, at any time during

3

such month, injects, stores and/or disposes of Slurry in any Voids within the Pattiki I Mine Area (each such month a 'Disposal Month'), same to be payable on or before the 15th day of the month following such Disposal Month;

ii. Beginning in the thirteenth (13th) Disposal Month and extending through and including the twenty-fourth (24th) Disposal Month, the sum of $20,833.33 per Disposal Month, same to be payable on or before the 15th day of the month following such Disposal Month;

iii. Beginning in the twenty-fifth (25th) Disposal Month, and extending until the expiration or termination of this Lease, the sum of $10,000 per Disposal Month, same to be payable on or before the 15th day of the month following such Disposal Month."

¶ 7     On November 12, 2019, the Campbells filed a motion seeking summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2018)) along with a supporting memorandum of law, statement of material facts, declaration of Jakob L. Campbell, and declaration of Amy S. Rubin. The Campbells' motion for summary judgment alleged they were entitled to monthly rental payments for those months that WCC injected water into the Voids as well as for the months that WCC stored "Slurry" within the Voids.

¶ 8     On March 24, 2020, WCC filed a cross-motion seeking summary judgment along with a memorandum of law in support of its motion for summary judgment and in opposition to the Campbells' motion for summary judgment, affidavit of Chris Russell, verified expert report of John L. Weiss, and Jakob Campbell's answers to defendant's first set of interrogatories. WCC's motion for summary judgment asserted that the lease did not provide that monthly rental payments would be owed for months in which only water, and not "Slurry," was injected into the Voids.

Additionally, WCC stated that no payments were due for storage because WCC was not storing the "Slurry" in the Voids because it disposed of the "Slurry" in the Voids.

¶ 9    Each party asserted the language of the lease was clear and unambiguous such that they each sought a finding from the circuit court as to the legal issues surrounding the application of the lease. A hearing on the cross-motions for summary judgment was held on August 10, 2020.

¶ 10    The circuit court entered its order granting summary judgment in favor of WCC on April 26, 2022. The order interpreted the term "Slurry" and found as follows:

> "4. The term 'Slurry' is defined on the first page of the Lease as 'water and coal slurry ("Slurry")'. The terms water and coal slurry are joined by inclusion of the conjunction 'and'. The Parties did not use other terms in the definition, such as 'either/or' or 'and/or'. A plain reading then, of the language used requires the term 'Slurry' to be defined as requiring a combination of both substances. Since additional water is added to the coal slurry (that already contains water) to dilute it for pumping purposes, this reading of the term 'Slurry' is the most practicable."

The order also interpreted the clause "injecting, storing and disposing of Slurry." The court made the following findings on that issue:

> "5. The lease is entitled 'Underground Storage Lease'. Despite that fact, the lease states that the Defendant may inject 'Slurry' into the Voids for the purpose of storing it or disposing of it.
>
> 6. The determination of whether the 'Slurry' is stored or disposed of is clearly an option for the Defendant to make.
>
> 7. The Defendant places no value on the 'Slurry' it has injected into the Voids and maintains that there is no viable method to extract it from the Voids. The 'Slurry' is

5

therefore considered disposed and the Defendant owes the Plaintiff a fee only for the month in which it was injected."

¶ 11 This timely appeal followed. Additional facts will be presented as necessary throughout the analysis.

¶ 12                                    II. ANALYSIS

¶ 13 Motions for summary judgment are governed by section 2-1005 of the Code of Civil Procedure, which provides that summary judgment should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, a court is not obligated to enter a summary judgment due to the mere filing of cross-motions, as the filings alone are not determinative of whether an issue of material fact exists. *Id.*

¶ 14 "Rulings on motions for summary judgment are reviewed *de novo*." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. We may affirm a grant of summary judgment on any basis contained within the record. *Id.*

¶ 15 *De novo* review is also appropriate as this matter turns on the interpretation of a contract as a matter of law. *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004). The principles of law applicable to contract interpretation are clear and free from doubt, and can be found, set forth in detail, in our supreme court's opinion in *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011):

"The basic rules of contract interpretation are well settled. In construing a contract, the primary objective is to give effect to the intention of the parties. [Citation.] A court will

6

first look to the language of the contract itself to determine the parties' intent. [Citation.] A contract must be construed as a whole, viewing each provision in light of the other provisions. [Citation.] The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract. [Citation.]

If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning. [Citation.] However, if the language of the contract is susceptible to more than one meaning, it is ambiguous. [Citation.] If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent. [Citation.]"

¶ 16                                A. Definition of Slurry

¶ 17    The Campbells urge us to find that water alone constitutes "Slurry" under the terms of the lease, which would mean any time water was injected into the Voids, it would be considered a Disposal Month and a rent payment would be due. WCC argues that "Slurry" was defined in the Lease to be "water and coal slurry," so any injection of solely water would not qualify as a Disposal Month and no payment would be due.

¶ 18    The portion of the Lease that defines "Slurry" states: "Lessee wishes to inject, store and/or dispose of *water and coal slurry* (*'Slurry'*) into the underground voids ***." (Emphasis added.) Thereafter, the Lease refers only to "Slurry" and does not use either "water" or "coal slurry." Our supreme court has defined the word "and" as meaning "in addition to." *In re M.M.*, 2016 IL 119932, ¶ 21. Accordingly, we find that in order to be "Slurry," as defined in the Lease, both water and coal slurry are required. Water alone is not encompassed by the defined term "Slurry."

¶ 19                                    B. Storage and/or Disposal

¶ 20    Next, the Campbells assert that since the previously injected Slurry has not been removed from the Voids, they are due rent for the storage of the Slurry. WCC contends that the Slurry in the Voids was disposed of into the Voids and was not stored there.

¶ 21    The Lease states: "Lessee wishes to inject, store and/or dispose of water and coal slurry ('Slurry') into the underground voids ***." When interpreting "store and/or dispose" we must apply the plain and ordinary meaning of "and/or," which indicates that two words may be taken together or individually. So, under the Lease, WCC could store and dispose of Slurry, or they could elect, individually, to store or dispose of Slurry.

¶ 22    Examining the additional relevant portions of the Lease supports this interpretation. The Lease provides that rent is owed only for months that are considered to be a "Disposal Month." "Disposal Month" is defined in the lease as "each month during the term of this Lease in which Lessee, at any time during such month, injects, stores and/or disposes of Slurry in any Voids within the Pattiki I Mine Area." The amount of rent owed changes based on the number of Disposal Months that have occurred, not calendar months.

¶ 23    The Campbells' position is that the Slurry is being stored in the Voids until such time that it is removed so they are owed rent until it is removed or the Lease terminates by reason of Final Operations Cessation. If this were the intent of the Lease, rental payments would be owed from the first month that Slurry was injected into the Voids and every subsequent calendar month until the Slurry is removed or the Lease terminates. This would render the provisions defining "Disposal Month," as well as the provisions reducing rent based on the number of Disposal Months that have occurred, meaningless. "A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the

8

language used." *Thompson*, 241 Ill. 2d at 442. Thus, we interpret the Lease to give WCC the option to store or dispose of Slurry.

¶ 24 This leads to the next question—How can we determine if WCC elected to store Slurry or to dispose of Slurry? In support of its motion for summary judgment, WCC submitted the affidavit of Chris Russell, a mine engineer employed by WCC, with personal knowledge of the Pattiki Mines and the issues in this case. Russell's affidavit stated:

> "The coal slurry yielded by the Pattiki Mine coal preparation plant at all times was a waste product without value and as such it was permanently disposed of in the mine voids. At no time did White County Coal, LLC, intend to retrieve the coal slurry injected into the mine voids. At no time did any mine plan or reclamation plan related to White County Coal, LLC, include retrieval of the coal slurry. After injection of the coal slurry into the mine voids, it is not possible to retrieve it."

¶ 25 The Campbells did not submit any counteraffidavits on this issue or challenge Russell's affidavit.

> "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact. [Citation.] Thus, facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion. [Citation.]" *Purtill v. Hess*, 111 Ill. 2d 229, 240-42 (1986).

Based on the foregoing, we must accept as true that the coal slurry was a waste product without value that was permanently disposed of because there is no way to retrieve it. Accordingly, WCC

was only obligated to pay rent for the Disposal Months that Slurry was injected for the purpose of disposing it.

¶ 26                                     III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the April 26, 2022, order of the circuit court of White County which granted summary judgment in favor of WCC.

¶ 28    Affirmed.