2024 IL App (1st) 230409-U
No. 1-23-0409

FIRST DIVISION
December 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CARLOS GUARISMA, LANI WOODS, and LORI ZARAGOZA, individually and on behalf of all others similarly situated, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | No. 20 CH 07426 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALPARGATAS USA, | ) | The Honorable |
| | ) | Caroline K. Moreland, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order following plaintiffs' motion to clarify the scope of a prior final order that approved a class action settlement, where (1) the circuit court retained jurisdiction to resolve all disputes regarding interpretation of the parties' settlement; (2) judicial estoppel did not bar the motion to clarify, and (3) the circuit court properly interpreted the underlying settlement agreement as limiting the scope of the settlement to the 136,549 transactions specifically referenced therein.

¶ 2    Defendant-appellant Alpartagas USA, Inc. (defendant) appeals from the circuit court order

of February 29, 2023, entered after briefing on plaintiffs' "motion to clarify" a prior final order

that incorporated the parties' class action settlement agreement. Defendant maintains that the circuit court lacked jurisdiction to consider the motion to clarify, or that judicial estoppel precluded the motion. In the alternative, defendant argues the trial court erred in its interpretation of the scope of the underlying settlement agreement. For the following reasons, we affirm the circuit court.

¶ 3                                     BACKGROUND

¶ 4     This appeal arises from a consumer class action suit against defendant, who owns or operates various Havaianas retail stores. The class action (which was originally filed in federal court) is premised on violations of the federal Fair and Accurate Credit Transactions Act (FACTA), which is designed to prevent identity theft. Specifically, the action is based on section 1681(c)(g) of FACTA, which states that "no person that accepts credit cards or debit cards *** shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S. Code § 1681c(g).

¶ 5     Each of the three named plaintiffs allegedly made retail purchases at Havaianas stores in 2018 and received receipts bearing more than the last five digits of their credit card account numbers, in violation of FACTA.

¶ 6     The record reflects that plaintiff Guarisma filed a class action complaint against defendant in the United States District Court for the Southern District of Florida in October 2018. The parties subsequently entered mediation, which resulted in them signing a "term sheet" in May 2019 that included material provisions of a proposed settlement. The term sheet was not a final contract, but contemplated that a "formal, final settlement agreement" would later be executed and eventually submitted for court approval.

¶ 7                         The October 2019 Settlement Agreement

¶ 8    In October 2019, the parties fully executed a "Settlement Agreement and Release" (hereinafter the "agreement") under which defendant would pay $2 million into a settlement fund.[1] Under the heading "CLASS DEFINITION," the agreement stated as follows:

"For purposes of settlement only, the Parties agree to certification of the following Settlement Class:

All persons who, within the two (2) years prior to the filing of the Complaint through the date of the court's order granting class certification, (i) engaged in one or more transactions using a debit card or credit card at one or more of Defendant Alpargatas USA, Inc.'s Havaianas locations in the United States, (ii) and for which Defendant's point-of-sale system was printing more than the last 5 digits of the card number or the expiration date upon any receipt.

Defendant represents that, according to its records, the customers in 136,459 transactions meet this definition. Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, the Settlement Class specifically excludes the following persons: The district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, and their spouses and minor children. The Settlement Class affirmatively includes Guarisma, Zaragoza and Woods.

Persons in the above class are collectively referenced herein as the 'Settlement Class,' and individually as 'Settlement Class Members.' Also excluded from the Settlement Class is any

---

[1] The agreement reflects that the parties and their counsel signed the agreement in counterparts between September 30, 2019 and October 4, 2019.

individual who opts out of the Settlement Class as described below."

¶ 9    We note that, insofar as the Class Definition referred to "2 years prior to the filing of the complaint," the parties do not dispute that this corresponds to October 20, 2016, *i.e.*, two years before the October 2018 filing of the complaint in federal court in Florida. Insofar as the settlement agreement referred to "the date of the court's order granting class certification," it is undisputed that such an order had not yet been entered when the agreement was executed in October 2019.

¶ 10    Under the heading "Changes in Practice," the agreement stated that "Defendant represents and Plaintiff understands that Defendant no longer prints any receipts that include more than the last five digits of cardholders' debit and credit card numbers."

¶ 11    The agreement included provisions regarding how members of the Settlement Class would be identified and notified. It provided that a "Claims Administrator" would be responsible for distribution of Class Notice and claim forms to settlement class members, making mailings to class members, and establishing a "Settlement Website that posts notices, Settlement Claim Forms and other related case documents."

¶ 12    The agreement contemplated that a "Summary Notice" notice would be sent "to all class members by email or first class, postcard regular mail." In addition, a "Long Form Notice" was to be posted on the Settlement Website.[2]

¶ 13    To facilitate notice, the agreement required that within seven days after preliminary approval, "Defendant shall provide Class Counsel with the following information *about each of the 136,459 potential Settlement Class Member transactions,* to the extent Defendant has the information: (a) the customer's name, (b) the customer's regular mail address, (c) the customer's

---

[2] Exhibits to the agreement included a form Summary Notice and Long Form Notice.

email address; (d) the customer's credit or debit card number, (e) the transaction date *** and (k) any other information Defendant has that might reasonably be used to identify and locate Settlement Class Members." (Emphasis added).

¶ 14　The settlement agreement contemplated the possibility that the action might be re-filed in state court. Specifically, it noted that "If the Eleventh Circuit determines that plaintiffs do not have Article III standing" for purpose of federal jurisdiction, "the Parties agree that this settlement shall proceed in state court in either Cook County, Illinois or in California state court."

¶ 15　　　　　The Settlement is Preliminarily Approved in Federal Court

¶ 16　On February 27, 2020, the federal court certified a settlement class and granted preliminary approval for a settlement. However, a subsequent Eleventh Circuit decision indicated the federal district court could not maintain subject matter jurisdiction over this sort of class action. See *Muransky v. Godiva Chocolatier*, 979 F.3d 917 (11th Cir. 2020) (holding that a plaintiff's mere allegation of a FACTA violation did not establish the requisite standing for federal court jurisdiction.)  Thereafter, the plaintiffs (including two new representative plaintiffs, Zaragoza and Woods) voluntarily dismissed the federal court action.

¶ 17　　　　　Proceedings in the Circuit Court of Cook County

¶ 18　In December 2020, plaintiffs re-filed a substantially identical class action complaint in the circuit court of Cook County. In January 2021, plaintiffs filed an amended class action complaint, proposing a class of "All persons who, within the two (2) years prior to the filing of the complaint in federal court through the date of the court's order granting class certification, (i) engaged in one or more transactions using a debit card or credit card" at one of Havaianas' locations in the United States "and for which Defendant's point-of sale system was printing more than the last 5 digits of the card number of the expiration date upon any receipt."

¶ 19    In February 2021, plaintiffs moved for preliminary approval of the class action settlement, noting that the settlement was "previously granted preliminary approval by a federal district court in Florida" in February 2020. The motion for preliminary approval reflected that the proposed settlement class would be defined as "All persons who, between October 20, 2016 and February 27, 2020, (i) engaged in one or more transactions using a debit card or credit card at one or more of Defendant Alpargatas USA, Inc.'s Havaianas locations in the United States, (ii) and for which Defendant's point-of-sale system was printing more than the last 5 digits of the card number or the expiration date upon any receipt." Thus, the referenced date range corresponded to (1) two years before the October 2018 filing of the complaint in federal court and (2) the date that the federal court certified a settlement class and granted preliminary approval. In the February 2021 filing, plaintiff stated that "The Settlement Class contains more than 120,000 members."

¶ 20    Later in February 2021, the circuit court entered an order certifying the settlement class, reciting the same definition of the class indicated in the motion for preliminary approval. That order did not specify the number of persons who fell within that definition. In the same order, the circuit court approved notice to the class through direct mailing.

¶ 21    On May 17, 2021, plaintiffs filed an unopposed motion for final approval of the class action settlement, which attached the October 2019 settlement agreement and a proposed final approval order. In that motion, plaintiffs stated that proper notice had been given to the class via direct mailing of the court-approved forms to those class members whose addresses could be found. Plaintiffs stated that they "identified 94,757 class members," and that of this number, they "obtained addresses for 80,893." Plaintiffs attached a declaration from the Claims Administrator representing that, based on credit and debit card transaction data from defendant and various banks, it had sent notice to 80,893 class members via direct mail or email.

¶ 22    The May 2021 Final Order Approves and Incorporates the Settlement Agreement

¶ 23    On May 24, 2021, the circuit court entered a "Final Order Approving Settlement Class, Approving Proposed Allocation of Settlement Funds, Approving Class Counsel's Application for Attorneys' Fees, Expenses and Incentive Award for Class Representatives, and Final Judgment" (hereinafter the "final order.) Significantly, the final order "incorporate[d] herein and makes a part hereof, the Agreement, including all Exhibits thereto." The final order also stated "the terms as defined in the Agreement shall have the same meaning for purposes of this Order" unless otherwise provided in the final order.

¶ 24    The final order stated that "The Settlement Class certified by the Court includes:

> All persons who, between October 20, 2016 and February 27, 2020,
> (i) engaged in one or more transactions using a debit card or credit
> card at one or more of Defendant Alpargatas USA, Inc.'s Havaianas
> locations in the United States, (ii) and for which Defendant's point-
> of-sale system was printing more than the last 5 digits of the card
> number or the expiration date upon any receipt."

 Thus, the final order specified a date range corresponding to the time period from (1) two years before filing of the federal court complaint and (2) the date that the federal court certified a settlement class. However, the final order did not mention how many transactions or persons were encompassed within the class. It made no explicit mention of the 136,459 transactions referenced in the agreement.

¶ 25    The circuit court's final order "finally approve[d] in all respects the Agreement" and directed the parties to "implement and consummate the settlement according to the terms and provisions of the Agreement." The last paragraph of the final order (paragraph 15) stated:

"Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Agreement and of this Order, to protect and effectuate this Order, and for any other necessary purpose."

¶ 26        The *Colin* Class Action Against Defendant in California State Court

¶ 27    On October 4, 2021, a different plaintiff initiated another class action against defendant for FACTA violations in the Superior Court of California, Los Angeles County, entitled *Colin v. Alpargatas USA, Inc.* No. 21 STCV36498. The *Colin* plaintiff sought to bring the action on behalf of a class of persons who, in the prior two years, received a receipt from Havaianas that printed credit card digits in violation of FACTA. Thus, the proposed class period in *Colin* was from October 4, 2019 to October 4, 2021. Notably, the *Colin* plaintiff pleaded that its class would not overlap with the settlement in instant matter; the complaint stated that the class would not include "persons who were members of the settlement class in *Carlos Guarisma v. Alpargas USA, Inc.* whose claims were released."

¶ 28    Defendant moved to strike portions of the *Colin* complaint regarding the class definition, urging that its proposed time frame for covered transactions (October 2019 to October 2021) would overlap with the time frame specified in the final order approving the *Guarisma* settlement (October 20, 2016 to February 27, 2020) and thus purport to bind persons already bound under the *Guarisma* settlement. In so doing, defendant urged that the scope of settlement in the *Guarisma* action was *not* limited to the 136,459 transactions referred to in the agreement, but that the settlement encompassed all transactions within the specified time frame, October 20, 2016 to February 27, 2020.

¶ 29    In July 2022, the California state court in *Colin* granted defendant's motion to strike, agreeing with defendant that the final order in *Guarisma* settled the claims of all persons who engaged in relevant transactions between October 20, 2016 and February 27, 2020. In so doing, the California court rejected the suggestion that the *Guarisma* class was limited to the 136,549 transactions identified in the settlement agreement. The California court remarked that "Insofar as Plaintiff implies that the settlement in *Guarisma* was unfair, or that the scope of the class was overbroad *** those arguments must be presented to the court that entered the judgment in *Guarsima*."

¶ 30        Plaintiffs' "Motion to Clarify" and Subsequent Circuit Court Proceedings

¶ 31    In August 2022, the class plaintiffs in the instant case filed a "Motion to Clarify Final Approval Order and Judgment" (the motion to clarify). In it, they referenced the *Colin* proceedings and averred that defendant was "attempting to expand the scope of the Settlement Class in a manner never contemplated by the parties or this Court" in order to limit its liability in the *Colin* action. Plaintiffs maintained that under the agreement that was incorporated in the final order, the "only claims released were those arising from the [136,549] transactions Defendant identified and represented comprised the class." According to plaintiff: "That is why the direct notice of the settlement was given to only those persons who made the 136,459 transactions (there was no publication notice)."

¶ 32    Plaintiff also argued that the "change of practice" provision of the agreement should have "made it impossible for the class to be any larger." That is, given defendant's representation that it was no longer printing receipts that violated FACTA, "there could be not additional class members beyond those who made the 136,459 transactions." Plaintiffs argued that defendant should not be able to expand the class to obtain a "windfall release for an unknown number of

class members, who did not receive notice and did not receive any benefit from the settlement." Plaintiffs asked the circuit court to "clarify" that the final order was "limited to the Settlement Class members who made the 136,459 transactions" referenced in the agreement.

¶ 33    Defendant filed a brief in opposition. Defendant maintained that the motion to clarify was untimely, as it was filed more than 30 days after entry of judgment; indeed, it was filed 457 days after the May 2021 final order. Defendant otherwise argued the motion could not be construed as a petition under section 2-1401 of the Code of Civil Procedure.

¶ 34    Apart from these procedural contentions, defendant argued that the plain language of the settlement agreement defined the class to consist of all persons who made transactions in the relevant time frame, not to a specific number of transactions. Insofar as the settlement agreement referred to 136,459 transactions, defendant asserted "this was provided as a reference point" but was "not part of the definition of Settlement Class Members." Notably, defendant did not indicate exactly how many persons or transactions were encompassed by the settlement.

¶ 35    In plaintiffs' reply, they argued the circuit court retained jurisdiction to interpret the settlement agreement beyond 30 days. Plaintiffs maintained that the documents comprising the settlement demonstrated that the parties' intent "was to only provide relief for 136,459 transactions that occurred before the change in practice."

¶ 36    Defendant moved for leave to file a sur-reply. In the proposed sur-reply, defendant averred that recently discovered records showed that plaintiffs' counsel were aware that defendant's stores were still issuing non-compliant receipts to customers, even after execution of the settlement agreement in early 2019. In turn, defendant argued that plaintiffs should be "judicially estopped" from attempting to limit the scope of the settlement. The trial court denied defendant's motion to file a sur-reply.

¶ 37    The record indicates that the circuit court considered the matter on the briefs without hearing oral argument.

¶ 38              The Circuit Court's Order on the Motion to Clarify

¶ 39    Following briefing on the motion to clarify, on February 28, 2023, the circuit court entered a written order in which it agreed with plaintiffs that the settlement class was limited to persons involved in the 136,459 transactions referenced in the agreement.

¶ 40    Before discussing the merits, the circuit court first determined it had jurisdiction to consider the motion to clarify, notwithstanding that it was filed more than one year after entry of the final order. It concluded that paragraph 15 of the final order made clear that "the Court expressly stated it retains jurisdiction to enforce and interpret the terms of the Settlement Agreement."

¶ 41    Turning to the the scope of the Settlement Class, the court recognized that the final order stated that it incorporated the settlement agreement and all exhibits thereto. Thus, "the Court can look at the Settlement Agreement as part of its Final Order."

¶ 42    The court recited the language defining the "Settlement Class" in both the Final Order and the Settlement Agreement, including the statement in the agreement that "Defendant represents that, according to its records, the customers in 136,459 transactions meet this definition." The circuit court also noted the agreement's statement that: "Defendant represents and Plaintiff understands that Defendant no longer prints any receipt that includes more than the last five digits of cardholders' debit and credit card numbers." The court also noted that the agreement specified that defendant would provide "information about each of the 136,459 potential Settlement Class Member transactions, to the extent Defendant has the information," which would be used to provide notice by mail to potential class members.

¶ 43 The court determined these provisions, taken together, indicated an intent that the Settlement Class would be limited to customers in the 136,459 transactions:

"The Court finds the parties agreed the Settlement Class was all persons who received a sales receipt with more than 5 digits of their debit or credit card of the expiration dates. The parties agreed in the Final Order the Settlement Class is limited to all persons who received such receipts between October 20, 2016 and February 27, 2020. Also, the Settlement Agreement states 'Defendant represents that *** the customers in 136,459 transactions meet this definition.' In other words, there were 136,459 transactions where someone received a sales receipt between October 29, 2016 and February 27, 2020. The Defendant provided in the Settlement Agreement a change of practice provision indicating that as of September 30, 2019, the Defendant was no longer printing sales receipts with more than the last five numbers of the card number or card expiration dates. Thus, there were no more potential transactions after September 30, 2019."

The court particularly emphasized the manner of notice contemplated by the agreement:

"Finally, and most important, the Settlement Agreement provides notice was to be given to those Settlement Class members upon receipt of the contact information from the Defendant relating [to] the 136,459 transactions. The Settlement Agreement provides notice was to be given by mail. There was no notice by publication. It should be emphasized that notice was only given to those persons relating to one or more of the 136,459 transactions. *** If there were any other potential class member they would not have been given notice as the Settlement Agreement did not provide for any notice to anyone outside of the 136,459 transactions."

¶ 44 The court concluded that, reviewing both the final order and the settlement agreement "as a whole," "based on the Settlement Class definition, the notice requirement and the change in practice provision, the Settlement Class is only those persons included within the 136,459 transactions." The court specified that its order was final and appealable.

¶ 45 Defendant filed a notice of appeal.

¶ 46 ANALYSIS

¶ 47 On appeal, defendant presents alternative arguments to challenge the February 2023 order upon plaintiffs' motion to clarify. Defendant urges that the circuit court did not have authority to consider the motion to clarify, or that plaintiffs were judicially estopped from filing the motion. In the alternative, defendant argues that the trial court erred when it interpreted the final order and settlement agreement to conclude that the Settlement Class was limited to the 136,459 transactions. We address these in turn.

¶ 48 The Circuit Court Expressly Retained Jurisdiction to Interpret the Settlement Agreement

¶ 49 Defendant primarily asserts that the trial court lacked jurisdiction to entertain the motion to clarify, as the motion was an untimely post-judgment motion under the provisions of the Code of Civil Procedure. That is, defendant asserts it was not timely motion for rehearing or modification of the judgment under 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203(a) (West 2022)), and that it otherwise did not satisfy the requirements of a section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2022)). Defendant claims that the motion to clarify did not actually seek "clarification" or interpretation, but sought to modify the final order. Thus, defendant argues that paragraph 15 did not preserve the circuit court's jurisdiction.

¶ 50 Whether a trial court had subject matter jurisdiction to entertain a claim or motion is a question of law, which we review *de novo*. See *McGoey v. Brace,* 2022 IL App 210322, ¶ 19. If a court "acts to resolve questions or provide relief beyond its jurisdiction, its orders are void." *Id.* (quoting *Board of Trustees of the Harvey Police Pension Fund v. City of Harvey*, 2017 IL App (1st) 153095, ¶17).

¶ 51 In paragraph 15 of the final order, the circuit court stated that it "retain[ed] continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Agreement and of this Order, to protect and effectuate this Order, and for

any other necessary purpose." We find this paragraph is dispositive on the issue of the circuit court's continuing jurisdiction to consider the motion to clarify.

¶ 52    Our case law makes clear that a trial court may expressly retain continuing jurisdiction with respect to settlement agreements. "The court's jurisdiction to enforce a settlement agreement does not depend on the use of 'magic words.'" *McGoey v. Brace*, 2022 IL App (1st) 210322, ¶ 21 (citing *Director of Insurance v. A&A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 722-26 (2008)) "To determine whether the trial court has retained jurisdiction to enforce a settlement agreement, the focus of our analysis [is] the trial court's intent." *Id.*

¶ 53    Here, the intent of the trial court to retain jurisdiction was evident. The trial court broadly stated that it retained jurisdiction "*over all matters relating to* the administration, consummation, enforcement, and interpretation of the Agreement and of this Order." (Emphasis added.) It is hard to see how the court could have been more explicit in expressing its intent to retain jurisdiction over matters pertaining to the settlement agreement and final order. Here, the record reflects the parties had a dispute over the scope of the Settlement Class, which necessarily involved interpretation of the final order and the agreement.

¶ 54    In finding jurisdiction, we reject defendant's suggestion that the motion to clarify was precluded by the 30-day time limitation for a motion made pursuant to section 2-1203 of the Code of Civil Procedure. 735 ILCS 5/2-1203 (West 2022). That provision sets a time limit in non-jury cases for filing of a "motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." *Id.* Defendant asserts that, pursuant to section 2-1203, the motion to clarify "should have been denied as an untimely motion to modify" the final order.

¶ 55    We disagree, as section 2-1203 was inapplicable to plaintiff's motion to clarify. That is, we reject defendant's position that the motion to clarify was a motion to modify the judgment. We

recognize that the character of a submission is determined by its content, not its label. "[C]ourts should look to what the pleading contains, not what it is called." *In re Haley D.*, 2011 IL 110886, ¶ 67 (citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002)). Accordingly, the mere fact that plaintiffs entitled their submission a "motion to clarify" is not dispositive.

¶ 56    Nonetheless, our review of the substance of the motion does not indicate that it should be construed as a motion under section 2-1203. In their motion, plaintiffs did not seek rehearing or retrial on the merits, or to vacate or modify the final order.  Rather, it is apparent that the parties have a dispute as to the interpretation of the scope of the settlement class under the final order and the settlement agreement that it incorporated. The motion to clarify sought the court's intervention to resolve the parties' disagreement as to the proper interpretation.

¶ 57    The case law supports plaintiffs' position on this point. "A motion for clarification of a trial court's previous action has been held not to fall within section 2-1203." *Welton v. Ambrose,* 351 Ill. App. 3d 627, 631 (2004) (citing *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 756-57 (1993) (Second District). This district has explained:

> "To modify an item is to change it. Webster's Third New International Dictionary 1452 (1981). A motion which merely requests that the court articulate the findings of fact and law upon which its prior judgment is predicated does not request a change in the judgment. Such a motion requests only a statement of the underlying reasons for the entry of the judgment. If the motion is granted *** the judgment is not changed or altered." *Hayes Machinery Movers, Inc. v. REO Movers & Van Lines, Inc.*, 338 Ill. App. 3d 443, 446 (2003).

¶ 58    Here, the plaintiffs' motion asked the trial court to articulate the precise scope of the settlement class, given the parties' differing interpretations of the final order and settlement agreement. Plaintiffs did not try to modify, alter or otherwise undermine the judgment. They asked the court to interpret the final order, as the trial court expressly reserved jurisdiction to do.

¶ 59    For similar reasons, we also reject defendant's argument that the motion to clarify was otherwise improper because it did not meet the requirements of a petition under section 2-1401 of the Code, which governs petitions seeking "[r]elief from final orders and judgment after, after 30 days from the entry thereof." 735 ILCS 5/2-1401 (West 2022).  Defendant urges that, since more than 30 days had passed since the final order, a section 2-1401 petition was the "only vehicle" by which plaintiff could attempt to modify the final order. See *Protein Partners, LLP v. Lincoln Provision, Inc.,* 407 Ill. App. 3d 709, 715 (2010) ("[A]n untimely postjudgment motion must be viewed as a section 2-1401 motion by the appellate court because it is the only vehicle that a party may use once the 30 days [to file a motion under section 2-1203] has expired. [Citation.]" Defendant proceeds to argue that plaintiff did not meet the additional requirements of a section 2-1401 petition, *i.e.*, "a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." *People v. Vincent*, 226 Ill. 2d 1, 7 (2007).

¶ 60    Defendant's reliance on section 2-1401 is unpersuasive because the motion to clarify did not seek relief from the final order. "Section 2-1401 of the Code represents a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. It is "ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry" but may "also be used to challenge

a purportedly defective judgment for legal reasons." *Id*. (quoting *Paul v. Gerald Delman & Associates*, 223 Ill. 2d 85, 94 (2006)).

¶ 61    We again recognize that a motion should be construed according to its substance, regardless of its title. See *Protein Partners*, 407 Ill. App. 3d at 715 (recognizing that "the controlling issue is the substance of a motion and the caption does not matter"). Here, the substance of the motion to clarify was *not* akin to a section 2-1401 petition seeking to vacate a prior judgment. Simply put, the motion to clarify did not attack the final order. Plaintiffs did not purport to identify facts that "would have precluded its entry," nor did they argue that the final order was "defective for legal reasons." *Warren County*, 2015 IL 117783, ¶ 31. Plaintiffs did not seek *relief from* the final order incorporating the settlement agreement; they sought to resolve a dispute as to its interpretation. Although defendant obviously disagreed with plaintiff as to the proper interpretation of the final order (and related settlement agreement), that does not mean that plaintiffs' motion was an attempt to modify or vacate the final order, in the manner of a section 2-1401 petition. Again, the motion presented a question of interpretation of the final order, which the trial court expressly reserved jurisdiction to address. This distinction undermines defendant's reliance on the proposition that an "untimely postjudgment motion must be viewed as a section 2-1401 motion *** because it is the only vehicle that a party may use once the 30 days has expired." *Protein Partners*, 407 Ill. App. 3d at 715. This statement is clearly referring to motions *attacking* the underlying judgment, which are governed by section 2-1203 or section 2-1401. It does not refer to motions to clarify, interpret, or enforce the underlying judgment.

¶ 62    In summary, we reject defendant's contention that the circuit court lacked jurisdiction to consider the motion to clarify. The motion sought to resolve a question of interpretation, for which the trial court had expressly reserved continuing jurisdiction.

¶ 63                    Judicial Estoppel Did Not Bar the Motion to Clarify

¶ 64    We turn to defendant's alternative procedural argument that the doctrine of judicial estoppel precluded plaintiffs' motion to clarify. Defendant urges plaintiffs should be estopped from arguing that the Settlement Class was limited to the 136,459 transactions referenced in the settlement agreement, because plaintiffs' counsel knew "as early as October 2019" that some of defendant's stores continued to issue receipts that violated FACTA. Defendant represents that it learned (only after responding to the motion to clarify), that "[plaintiffs'] counsel personally went to one of [defendant's] stores in October 2019 *** made a purchase, received a receipt that allegedly listed more than the last five digits of their card number, and said nothing to Appellant or the courts." That is, plaintiffs' counsel allegedly knew long before they moved for approval of the settlement class that there were additional persons (beyond the 136,549 transactions) who received non-conforming receipts. Defendant asserts that plaintiffs knew "that additional class members arose between the execution of the Settlement Agreement [in October 2019] and the end of the class period on February 27, 2020." Defendant points out that in moving for approval of the settlement, plaintiffs never disclosed to the trial court that they knew that there were additional class members. According to defendant, because plaintiffs proceeded to move for approval of the settlement while knowing that the class was "not limited to 136,459 transactions," they were equitably estopped from bringing the motion to clarify.

¶ 65    We note that defendant's initial response to the motion to clarify in the trial court did not make this estoppel argument, apparently because defendant had not yet discovered the referenced transactions by plaintiffs' counsel. Defendant sought leave to file a sur-reply that would include this argument, but leave was denied. Accordingly, this judicial estoppel argument was not before the circuit court when it decided the motion to clarify.

¶ 66    "Generally, arguments not raised in the circuit court are forfeited and cannot be raised for the first time on appeal. [Citation.]" *Gunnison Commons, LLC v. Alvarez*, 2024 IL App (1st) 232176, ¶ 23. However, "waiver and forfeiture rules are admonitions to the litigants, rather than a limitation on the jurisdiction of the reviewing court," and we may "override considerations of waiver and forfeiture in order to achieve a just result and maintain a sound and uniform body of precedent." *Id.* Here, we exercise our discretion to consider the judicial estoppel argument. Nevertheless, we are not persuaded that judicial estoppel applies.

¶ 67    Judicial estoppel is an "equitable doctrine invoked by the court at its discretion." *Seymour v. Collins*, 2015 IL 118432, ¶ 36. The "uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Judicial estoppel applies "when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding." *Id.*

¶ 68    Five prerequisites are generally required. "The party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. [Citations.]" *Id.* ¶ 37. Judicial estoppel must be proved by clear and convincing evidence. *Id.* ¶ 39. This standard "properly accounts for a degree of caution with which this doctrine should be considered and applied." *Id.*

¶ 69    Here, we do not find by "clear and convincing evidence" that plaintiff actually took factually inconsistent positions. We acknowledge that plaintiffs do not dispute defendant's claim that plaintiffs' counsel knew that certain of defendant's stores were printing non-compliant

receipts, after the settlement was executed but before they moved for court approval. Indeed, plaintiffs do not dispute that as early as October 2019, plaintiffs' counsel themselves engaged in transactions and received receipts that violated FACTA. Thus, it appears that plaintiffs' counsel knew that there were customers beyond those involved in the 136,459 transactions who had received nonconforming receipts. However, whether plaintiffs' counsel should have disclosed such information is not the issue. Rather, estoppel requires that plaintiffs took two positions "that are factually inconsistent." *Id*.

¶ 70 Here, even assuming that plaintiff's counsel knew of additional FACTA violations, we do not find it establishes factually inconsistent positions with respect to the specific settlement agreement at issue. That is, we cannot say that plaintiffs' motion to approve the settlement referencing 136,459 transactions (despite counsel's apparent knowledge that defendant was still violating FACTA) is necessarily inconsistent with plaintiffs' eventual motion to clarify that the settlement was limited to the customers involved in the same 136,459 transactions. This is because the record indicates that the parties have a genuine dispute as to the proper interpretation of the scope of the class. Indeed, plaintiffs arguably have consistently maintained *the very same position*: that the agreement reflected the parties' intent to limit the settlement to the referenced 136,459 transactions.

¶ 71 In other words, defendant's estoppel argument assumes that its interpretation of the scope of the settlement agreement is correct: *i.e*., that the class definition extended to *all* transactions in the specified date range from October 2016 to February 2020. That is, defendant assumes that the parties intended the scope of the settlement to go beyond the 136,459 transactions referenced in the agreement, such that it was inconsistent for plaintiff to argue otherwise in the motion to clarify. However, (as we will discuss below), the settlement agreement does not support defendant's

reading, given its repeated reference to the 136,459 transactions. At the very least, it appears there was a *bona fide* dispute about the scope of the settlement agreement; thus, we cannot conclude that plaintiffs were "deliberately changing positions" when they filed the motion to clarify. Accordingly, we cannot say that defendant has proven the elements of judicial estoppel by clear and convincing evidence. We thus decline to hold that plaintiffs were estopped from filing the motion to clarify.

¶ 72    To be clear, in declining to find judicial estoppel, we do not mean to approve or reward the alleged conduct of plaintiffs' counsel. The record suggests that plaintiffs' counsel knew that defendant committed additional FACTA violations beyond the 136,459 transactions identified by defendant in the settlement agreement, but plaintiffs' counsel did not share that information with defense counsel or the court before moving for final approval of the settlement. They apparently did so despite defendant's representation in the settlement agreement that it was no longer issuing non-conforming receipts. Whether counsel's motives for the non-disclosure—and whether it violated any duties to the circuit court or to defense counsel—are not before us. If defense counsel believes plaintiffs' counsel's conduct amounts to grounds for invalidating the settlement agreement, it may argue that to the circuit court. But it is not a matter of judicial estoppel that prevents us from deciding the interpretation question presented by the motion to clarify.

¶ 73        The Trial Court Did Not Err in Interpreting the Settlement Agreement

¶ 74    Having rejected defendant's arguments that the trial court should not have considered the motion to clarify, we turn to its contention that the trial court erred in its interpretation of the scope of the settlement. Specifically, defendant argues that the court erred when it agreed with plaintiffs that the Settlement Class was limited to the persons involved in the referenced 136,549 transactions.

¶ 75 We briefly note that the parties disagree as to the applicable standard of review with respect to the circuit court's order upon the motion to clarify. Plaintiffs contend that, insofar as the court found that the settlement class was limited to persons involved in the 136,459 transactions, a manifest weight of the evidence standard applies. Defendant asks that we review the circuit court's decision *de novo.* Because the trial court's order relied on interpretation of the settlement agreement, we agree with defendant that a the *de novo* standard is appropriate. Settlement agreements are contracts, and "[t]he interpretation of a contract presents a question of law subject to *de novo* review in accordance with the general rules applicable to contract interpretation. [Citation.]" *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 21.

¶ 76 Under these principles:

> "Our primary goal in interpreting a contract is to give effect to the intent of the parties. [Citation.] When the words of a contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. [Citation.]. When the language of the contract is susceptible to more than one reasonable meaning, it is ambiguous, and the court can consider extrinsic evidence to determine the parties' intent. [Citation.] However, the parties' disagreement on the meaning of a contract term does not, by itself, make that term ambiguous. [Citation.]" *Id.*

¶ 77 We are also mindful that "the contract must be construed a whole, viewing each provision in light of the other provisions. [Citation.] The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 210984, ¶ 57 (quoting *Insurance Benefit Group, Inc.*

*v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 38. "A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." (Internal quotation marks omitted). *Id.*

¶ 78    Notably, defendant does not argue that the settlement agreement contained any ambiguous term. Rather, defendant contends that the circuit court erred in interpreting the scope of the settlement class set forth in the agreement. Defendant relies largely on the formatting of one particular sentence in the the "CLASS DEFINITION" section of the agreement. The entire language of that section is as follows:

"For purposes of settlement only, the Parties agree to

certification of the following Settlement Class:

> All persons who, within the two (2) years prior to the filing of the Complaint through the date of the court's order granting class certification, (i) engaged in one or more transactions using a debit card or credit card at one or more of Defendant Alpargatas USA, Inc.'s Havaianas locations in the United States, (ii) and for which Defendant's point-of-sale system was printing more than the last 5 digits of the card number or the expiration date upon any receipt.

Defendant represents that, according to its records, the

customers in 136,459 transactions meet this definition.

Notwithstanding the foregoing, in compliance with 28 U.S.C. §

455, the Settlement Class specifically excludes the following

persons: The district judge and magistrate judge presiding over this

case, the judges of the United States Court of Appeals for the

Eleventh Circuit, and their spouses and minor children. The

> Settlement Class affirmatively includes Guarisma, Zaragoza and Woods.
>
> Persons in the above class are collectively referenced herein as the 'Settlement Class,' and individually as 'Settlement Class Members.' Also excluded from the Settlement Class is any individual who opts out of the Settlement Class as described below."

¶ 79 Defendant urges that the class definition includes *only* the single-spaced block-quoted language, but does not include the very next sentence in which defendant represented that "the customers in 136,549 transactions meet this definition." Defendant contends that the reference to the 136,549 transactions was not part of the class definition but was merely "illustrative" and "for purposes of settlement only."

¶ 80 Defendant argues that in finding otherwise, the trial court was misled by plaintiffs' motion, whose recitation of the provision used slightly different formatting to "alter[] the indentation of the sentence mentioning the 136,549 transactions to match the indentation of the block-quoted class definition." Defendant urges this "confused the circuit court and creat[ed]the impression that the 136,459 transactions were part of the class definition in the Settlement Agreement." Accordingly, defendant asserts that the court erred in determining, upon the motion to clarify, that the class definition incorporated the reference to the 136,549 transactions.

¶ 81 We disagree with defendant. We are not convinced that the formatting issue misled or confused the trial court into erroneously interpreting the agreement. Rather, reviewing the entirety of the "CLASS DEFINITION" provision along with other parts of the agreement, we think the

trial court correctly determined that the Settlement Agreement indicated the parties' intent that the settlement class would consist of customers involved in the referenced 136,549 transactions.

¶ 82    First, we reject defendant's suggestion that the definition of the settlement class must limited to this single block-quoted sentence:

> "All persons who, within the two (2) years prior to the filing of the Complaint through the date of the court's order granting class certification, (i) engaged in one or more transactions using a debit card or credit card at one or more of Defendant Alpargatas USA, Inc.'s Havaianas locations in the United States, (ii) and for which Defendant's point-of-sale system was printing more than the last 5 digits of the card number or the expiration date upon any receipt."

Although this is the only block-quoted sentence under the "CLASS DEFINITION" portion of the settlement agreement, the "CLASS DEFINITION" section does *not* end there. Rather, it goes on to include two additional paragraphs—beginning with defendant's representation about the 136,459 transactions—that plainly provide additional details on which persons may or may not fall within the class:

> "Defendant represents that, according to its records, the customers in 136,459 transactions meet this definition. Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, the Settlement Class specifically excludes the following persons: The district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, and their spouses and minor children. The Settlement Class affirmatively includes Guarisma, Zaragoza and Woods.

> Persons in the above class are collectively referenced herein as the 'Settlement Class,' and individually as 'Settlement

Class Members.' Also excluded from the Settlement Class is any

individual who opts out of the Settlement Class as described

below."

¶ 83    These sentences are plainly intended to describe who is included or excluded; that is, they comprise part of the definition of the settlement class. In other words, they modify and place limits on the scope of the prior, broader sentence referring to "All persons who" engaged in transactions at defendant's stores within the referenced time frame. Just as certain of these sentences exclude certain persons from falling within the scope of the class, defendant's representation that "customers in 136,549 transactions meet this definition" must be construed as describing who is included in the settlement class.

¶ 84    Defendant urges that we disregard this representation as merely "illustrative," but this contention runs afoul of the well-settled principle that "[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless." *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). "[W]hen parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that that the language employed is to be given effect. [Citation]." *Id.* We cannot ignore that the parties inserted within the "CLASS DEFINITION" section an explicit representation by defendant that customers involved in 136,459 transaction "meet this definition." We must presume that this had some meaning in defining the scope of the class, especially as defendant does not suggest any other possible reason for the parties' decision to include this specific representation. Thus, the trial court's order on the motion to clarify properly gives effect to the parties' decision to insert reference to the 136,549 transactions.

¶ 85    Further weighing in favor of the trial court's interpretation, the agreement referenced the same 136,459 transactions in another key provision. "A contract must be construed as a whole,

viewing each provision in light of the other provisions." *Id*. at 441. Of particular significance, the provisions regarding identification of and notice to potential class members explicitly referenced the same 136,459 transactions.

¶ 86    The agreement called for notice to be accomplished by emailing or mailing a "Summary Notice" using information provided by defendant, as well as by establishment of a Settlement Website. To facilitate notice, the agreement required defendant to provide "the following information *about each of the 136,459 potential Settlement Class Member transactions*, to the extent Defendant has the information: (a) the customer's name, (b) the customer's regular mail address, (c) the customer's email address; *** and (k) any other information Defendant has that might reasonably be used to identify and locate Settlement Class Members." (Emphasis added).[3] We think the parties' choice to repeat the reference to "the 136,459 potential Settlement Class Member transactions" must be construed to have some significance in reflecting the parties' understanding about scope of the class. Certainly, the parties could have more generally required defendant to provide information about "any potential Settlement Class Member" or used other, less specific language. Instead, they chose to specify that notice would be directed to the customers involved in these specific 136,459 transactions, *i.e.,* the same number referenced in the "CLASS DEFINITION" part of the agreement.

¶ 87    As the trial court observed, this manner of notice supported a more limited view of the universe of potential class members. The agreement did not call for a broader means of publication, such as television or radio or newspaper advertising, as might be expected if there were untold

---

[3] We note that defendant does not argue there is any ambiguity in the phrase "the 136,459 potential Settlement Class Member transactions." It is apparent that this phrase is referring to the same transactions referred to in the "CLASS DEFINITION" portion of the agreement.

thousands of potential claimants beyond the 136,459 transactions.[4] We recognize that the agreement called for establishment of a Settlement Website for class members to learn more about the settlement and access related forms. Nonetheless, the primary means of alerting class members was by mailing or emailing the individuals involved in the 136,459 transactions, to the extent their contact information could be discovered. This is consistent with an understanding that the 136,459 transactions limited the scope of the Settlement Class.

¶ 88    Further, we agree that a more limited reading of the scope of the class is consistent with the "changes in practice" provision of the settlement agreement, which stated that "Defendant represents and Plaintiff understands that Defendant no longer prints any receipt that includes more than the last five digits of cardholders' debit and credit card numbers." In effect, defendant represented that it was no longer violating FACTA, indicating that there could be no new potential class members. This is consistent with a reading of the settlement agreement as limiting the scope of class members to the 136,459 transactions that defendant represented fit the class definition.

¶ 89    This leads us to address defendant's position that interpreting the scope of the settlement by reference to the 136,459 transactions "leads to absurd results and nullifies part of the class definition itself," insofar as the class definition in the 2019 settlement agreement referenced a future date as the end of the relevant time period. Defendant emphasizes the language in the Class Definition indicating that it would include persons who received non-FACTA compliant receipts "within the two (2) years prior to the filing of the Complaint *through the date of the Court's order granting class certification.*" (Emphasis added.) The class had not yet been certified when the agreement was executed in October 2019. Class certification in federal court did not occur until February 2020. Defendant avers: "But if only the 136,459 transactions mentioned in the Settlement

---

[4] We note that defendant does not offer any estimate of how many transactions or customers defendant believes engaged in relevant credit or debit card transactions during the time frame set forth in the class definition.

Agreement itself *** can be included in the class, there was no reason for the parties to use a future date for the end of the class period, and the parties' own definition of the class period is nullified." By the same rationale, defendant argues that the "changes in practice" provision does not support plaintiffs' position, because "the class period expressly extended well past" the execution of the contract.

¶ 90    Defendant cites the propositions that contracts should not be interpreted to have absurd results, and that this court should "harmonize seemingly discordant provisions of a contract to avoid *** render[ing] some of those provisions meaningless." *Standlee v. Bostedt,* 2019 IL App (2d) 180235, ¶ 55. We recognize these principles, but we find they actually weigh much more heavily in support of plaintiffs' (and the trial court's) interpretation: that the class definition must be tied to the 135,459 referenced transactions.

¶ 91    We recognize that there is some tension between the parties' decision to indicate in the Class Definition that the temporal scope of the class would extend up to a future date (court certification), while at the same time defendant represented that it had *already* ceased violating FACTA. However, adopting defendant's position would result in a much more "absurd" result, as it would leave a number of provisions meaningless. Defendant's interpretation would make meaningless the portion of the class definition in which it represented that 136,459 transactions met the class definition. We cannot adopt an interpretation that would render this mere surplusage, especially where the agreement elsewhere indicated that the class members would be identified and contacted through information from these exact same transactions. Defendant was clearly represented by qualified counsel and, for whatever reasons, agreed to inclusion of this language. Defendant is stuck with the plain meaning of this language, regardless of whether it now claims,

in hindsight, that it was not intended to have any actual significance in limiting the scope of the settlement.

¶ 92    Similarly, defendant's interpretation—that the Class Definition's reference to a future date of class certification meant the parties intended to include future FACTA violations in the class—is directly contradicted by defendant's explicit representation that "Defendant no longer prints any receipts that include more than the last five digits of cardholder's debit and credit card numbers." Clearly, this was a significant, bargained-for term indicating defendant was no longer engaging in the FACTA violations that were the basis for the lawsuit. To render this provision meaningless would be absurd. We simply cannot ignore it.

¶ 93    In sum, construing the entirety of the "CLASS DEFINITION" and other provisions of the settlement agreement, we agree with the trial court's interpretation that the class definition was limited to the persons involved in the 136,459 referenced transactions. We thus reject defendant's arguments and affirm the trial court's order.

¶ 94    Before we conclude, we recognize that the instant dispute was motivated by the *Colin* class action in California state court, brought by the same plaintiffs' counsel against the same defendant. It appears that the motion to clarify was precipitated by the dispute in the *Colin* action as to whether the putative *Colin* class could encompass customer transactions (exclusive of the 136,549 referenced in the settlement agreement) that otherwise fell within the applicable date range set forth in the class definition of the *Guarisma* settlement. In opposing the motion to clarify, defendant was trying to shoehorn into the instant settlement as many persons as possible (including transactions through February 27, 2020, even beyond the 136,549 referenced transactions), in order to widen the scope of this settlement and limit their potential liability in *Colin* or other

litigation. Conversely, plaintiffs' counsel understandably wanted to limit the scope of persons released by the settlement to those involved in the specified 136,549 transactions.

¶ 95    In hindsight, it appears the parties could have saved themselves much time and expense in this court and in other courts, had they acted to amend the Settlement Agreement (executed in October 2019) in the ensuing months before the settlement was finally approved in the circuit court.  For example, if they wanted to broaden the scope of the class, it is puzzling to us why they never deleted or amended the agreement's reference to "136,459 transactions," both in the Class Definition and in the provisions describing how notice would be accomplished. Certainly, they could have adjusted the number of transactions at issue. More simply, if they did not want the class definition to be limited in this manner, they could have simply removed from the class definition any reference to a specific number of transactions. Similarly, it is somewhat difficult to understand how defendant never amended its representation in the agreement that its receipts no longer violated FACTA (especially as defendant acknowledges it later discovered this was factually inaccurate). Perhaps, in their desire to finalize a settlement, the parties incorporated the entire October 2019 agreement without properly considering whether any amendment was warranted.

¶ 96    Of course, it is not our role to assess the wisdom of the parties in inserting the language they did. Our job is to apply the plain language of the contract as a whole. In doing so, we come to the same conclusion that the trial court did. The Settlement Agreement (which was incorporated into the final order) contemplated that the Settlement Class was limited to the customers involved in the referenced 136,459 transactions.

¶ 97                                        CONCLUSION

¶ 98    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 99    Affirmed.